IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

MONTEY A. WHITE,

          Plaintiff,

v.                                         CIVIL ACTION NO.   5:11-cv-01003

ALLIANCE HEALTHCARE SERVICES, INC.,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendant Alliance Healthcare Services, Inc.'s Motion for Summary Judgment* (Document 16), wherein Defendant asserts that although Plaintiff "alleges that he was treated unfairly in his employment when he was demoted for sending an email message that violated Alliance's Anti-Discrimination and Anti-Harassment Policy and training[,]" he fails to offer any evidence: (1) that Alliance took an adverse action against him because of his sex or (2) that the reasons for his demotion were pretextual. Upon consideration of the parties' submissions, the Court finds that Defendant's motion should be granted.

*I.*

Plaintiff Montey A. White, Manager of Operations for Defendant Alliance Healthcare Services, Inc., brings this civil action against his long time employer in a dispute over the change in his employment during 2009 and 2010. The conflict in this case began on August 4, 2009, when Plaintiff sent an e-mail to four co-workers soliciting their assistance in contacting state congressional representatives to "tell them that you want your representatives to vote NO on

Universal Health Care (and anything else Curious George wants to accomplish)." Defendant Alliance Healthcare Services, Inc.'s Reply Memorandum in Support of its Motion for Summary Judgment ("Def.'s Reply"), Ex. C. E-mail Communications (Document 20) at 1). The e-mail also included the use of "nick-names" for Senator Robert Byrd, Senator Jay Rockefeller, and Congressman Nick Rahall. (*Id*.) Nine days later, Kim Hoffman, another of Defendant's Managers of Operations and a recipient of Plaintiff's e-mail communication, forwarded the e-mail message to her "team" with the additional note: "Here are the numbers for our representatives if you want to call about the health care reform." (*Id*.) The following day, one of Hoffman's team members objected to the "remark made by an Alliance Manager of Operations." (*Id*.) On August 17, 2009, Defendant's Human Resources Director notified Plaintiff by letter that Defendant was conducting an investigation into an allegation of his inappropriate behavior. As a result of the investigation substantiating "some or all of the allegations made regarding [his] inappropriate behavior," as well as Plaintiff's "prior unrelated performance warning," Defendant demoted Plaintiff from Manager of Operations to MRI Technologist. (Def.'s Mem. Ex. B. August 28, 2009 Letter from Laura Cline, Director of Human Resources, to Plaintiff ("Cline Letter") (Document 16-2) at 2).[1] The demotion affected Plaintiff's title, duties and salary.

---

1  Specifically, Defendant's Director of Human Resources advised Plaintiff that:

> Your role and response to these allegations have been thoroughly investigated, and we have substantiated some or all of the allegations made regarding inappropriate behavior. We ascertain that your role as Manager of Operations requires you to uphold and support the policies and procedures of Alliance Healthcare Services. Specifically, you are required to uphold the requirements of the Anti-Discrimination Anti-Harassment Policy and training[.]
>
> Although you indicated the email comment that you made was allegedly not meant as a racial term, at a minimum your behavior and comment were unprofessional and not in keeping with the demeanor that Alliance expects of its management employees.

Additionally, Plaintiff was warned that "any violation of . . . the Company's equal employment opportunity and non-harassment expectations by you going forward will result in further disciplinary action, up to and including immediate discharge." (*Id*. at 2.) The parties do not dispute that Plaintiff authored the e-mail communication, meant the "Curious George" term as a reference to the President of the United States, Barack H. Obama, or that he sent the communication from his work e-mail account.

This was not Plaintiff's first instance of alleged misconduct. He was previously reprimanded for pay-related practices. Specifically, Defendant asserts that in 2005 an investigation revealed wrongdoing in Plaintiff's pay practices that involved "overpayments, improperly used 'comp time,' and otherwise maintained inaccurate pay records." (Defendant Alliance Healthcare Services, Inc.'s Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem.") (Document 17) at 1.) As a result, Defendant issued a final warning to Plaintiff admonishing his work performance and warning him that if there were "any future performance issues relating to pay practices or in other areas, [his] employment with Alliance Imaging will be terminated immediately." (Def.'s Mem. Ex. A. December 19, 2005 Letter from Michael F. Frisch to Plaintiff ("Frisch Letter") (Document 16-1) at 1). Six months following the incident relative to the e-mail communication, Defendant Alliance notified Plaintiff that "[a]s a result of changes occurring in [its] business" his employment status would change from Full Time status to PRN status (or part-time) and that his benefits would be adjusted accordingly.

---

> Based on the stature of your indiscretion and your prior unrelated performance warning, we must regrettably inform you that effective August 31, 2009, you will be removed from your position of Manager of Operations."

(Cline Letter at 2.)

3

(Def.'s Mem. Ex. C. March 15, 2010 Letter from Laura Cline to Plaintiff ("March Cline Letter") (Document 16-3) at 1.)

Plaintiff alleges that he has been forced to work in a hostile work environment due to his employer's decision to alter his employment after the investigation of the e-mail he distributed. (Compl. ¶ 30.) He contends that the female manager who distributed his e-mail to others did not receive the same disciplinary action charged against him and that he was discriminated against based on his gender. As a result, Plaintiff alleges that he suffered a loss of income, loss of benefits, embarrassment, and humiliation. (*Id*.) Defendant removed this matter on December 21, 2011, by invoking this Court's diversity jurisdiction. On June 22, 2012, the Court denied Defendant's motion to dismiss. Defendant now moves for summary judgment with respect to Plaintiff's claim of gender discrimination.

*II.*

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. (*Id*.) The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23. However, the

4

non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.

### III.

Defendant moves for summary judgment by asserting that Plaintiff cannot offer any evidence to support his sex discrimination claim because he cannot show that any adverse employment action occurred "but for" his gender. (Def.'s Mem. at 4-5.) Defendant further argues that even if the court were to find that Plaintiff could make a prima facie case of discrimination, it has submitted evidence that Plaintiff's demotion was the result of performance concerns, inappropriate behavior and corporate restructuring and that Plaintiff has not offered any evidence establishing this non-discriminatory reason as pretextual. (Def.'s Mem. at 4-6.) Upon consideration of the parties arguments and evidentiary submissions (or the lack thereof), this Court agrees.

West Virginia's Human Rights Act prohibits an employer from "discriminat[ing] against an individual with respect to . . . tenure, terms, conditions, or privileges of employment[.]" W. Va. Code § 5-11-9(1).[2] In order to establish a prima facie case of employment discrimination under the Act, a plaintiff must prove: "(1) That the plaintiff is a member of a protected class; (2) that the employer made an adverse decision concerning the plaintiff, and (3) but for the plaintiff's protected status, the adverse decision would not have been made." *Conaway v. Eastern Assoc. Coal Corp.*, 358 S.E.2d 423, 429 (W. Va. 1987); *see State ex rel. State of West Virginia Human Rights Comm'n v. Logan-Mingo Area Mental Health Agency*, 329 S.E.2d 77 (W. Va. 1985) (stating the third element in a more specific manner for disputes involving the unequal treatment of employees as: "that a nonmember of the protected group was not disciplined, or was disciplined less severely, than the complainant, though both engaged in similar conduct.") The West Virginia Supreme Court of Appeals recognized in *Conaway* that the third element would be a point of dispute. (*Conaway*, 358 S.E.2d at 429) ("The first two parts of the test are easy, but the third will cause controversy."). To that end, the Supreme Court of Appeals instructed that the third element may be established by "some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegally discriminatory criterion." *Conaway*, 358 S.E.2d at 429-30; (*Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152, 161 (W. Va. 1995) ("The 'but for' test of discriminatory motive in *Conaway* is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination.") Such evidence could be proven by "an admission by the employer," or a "case of unequal or disparate treatment between members of the protected

---

[2] Under this Act, "the term 'discriminate' or 'discrimination' means to exclude from, or fail or refuse to extend to, a person equal opportunities because of . . . sex . . . and includes to separate or segregate[.]" W. Va. Code § 5-11-3(h).

class and others by the elimination of the apparent legitimate reasons for the decision[.]" *Conaway*, 358 S.E.2d at 430. The *McDonnell Douglas* burden shifting paradigm found in federal laws relative to employment discrimination is also relevant to West Virginia discriminatory actions. *Young v. Bellofram Corp.*, 705 S.E.2d 560, 566 n.8 (W. Va. 2010). Therefore, "[o]nce the plaintiff has met this burden [of establishing the prima facie case], the burden [of production] would shift to the employer to show some nondiscriminatory reason for the decision." (*Conaway*, 358 S.E.2d at 430; *Young*, 705 S.E.2d at 565-66.) This reason need not be "a good one," or "one which the judge or jury would have acted upon," it just needs to be "any other reason except that the plaintiff was a member of a protected class." (*Id.*) If such a reason is offered, the employee is then charged with "rebut[ting] the employer's evidence with a showing that the stated reason was merely a pretext for discriminatory motive." (*Id.*).

In this case, there can be no doubt that Plaintiff is a member of a protected class and that he suffered an adverse employment action (*i.e.*, demoted in 2009 as result of the e-mail communication and in 2010 during the reorganization). (*See* Pl.'s Opp'n at 3-4) ("While the Defendant may have made changes to its business structure after the fact, those changes and their effect on the Plaintiff, are also directly related to the Plaintiff having been demoted improperly."). Plaintiff has failed to present any evidence demonstrating the nexus between his protected class (male gender) and his employer's decision to demote him in 2009 and to move him to part-time status in 2010.[3] He has alleged, but not shown through any evidence, that there was unequal

---

[3] In an attempt to explain his failure to present evidence in support of his claim, Plaintiff argues that he requested certain information from Defendant, but Defendant either objected to the discovery request or failed to provide the requested information. (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") (Document 18) at 3,6, 8). A review of the record in this case reveals that Plaintiff did not avail himself of the provisions in the Federal Rules of Civil Procedure permitting a motion to compel the disclosure of discovery materials nor did he seek to take the deposition of Defendant's designee, pursuant to Rule 30(b)(6), or any of the recipients of his email. Moreover, Plaintiff has not asserted, pursuant to Rule 56(d) that he cannot defend against

treatment between him and Ms. Hoffman, the manager of operations who forwarded his e-mail. Pointedly, Plaintiff has not shown that he and a nonmember of his protected class engaged in similar conduct. The record before the Court does not reveal that Ms. Hoffman and Plaintiff are comparable in that Plaintiff has not shown that she drafted an e-mail with racial references or communications that were "unprofessional".[4] Moreover, there is no evidence that Ms. Hoffman has any negative performance history in her personnel file. Instead, Plaintiff's file includes the "Final Warning" issued on December 19, 2005, relative to the noted instances of "overpayment, use of 'comp time,' and inaccurate record keeping." As a result of that performance issue, Plaintiff was warned that if he had "any future performance issues relating to pay practices or in other areas" he would be "terminated immediately." Notwithstanding his assertion that the evidence "will show" that this "Final Warning" was "never intended to be a potential basis for increasing any future disciplinary action on unrelated matters[,]" it remains that Plaintiff has not presented any evidence to support this argument. The current posture of litigation requires Plaintiff to demonstrate such evidence now. Fed.R.Civ.P.56. Moreover, Plaintiff's assertion directly contradicts the December 19, 2005 Letter. Because of the foregoing, the Court cannot find that Plaintiff has presented a genuine dispute of material fact supporting the third element of the prima facie gender discrimination case. Therefore, the Defendant is entitled to summary judgment as a matter of law.

---

this motion based on the lack of information. Consequently, the Court will not consider Plaintiff's arguments thereto.

4    Attached to Defendant's Reply is an exhibit of the relevant email communication authored and sent by Plaintiff and the email from Ms. Hoffman, wherein she forwarded Plaintiff's email to others. Defendant asserts that Plaintiff and Ms. Hoffman are not analogous in that "Plaintiff's female co-worker simply forwarded Plaintiff's racially offensive e-mail to another group of employees, seemingly unaware of Plaintiff's racist comments lurking in the bottom of the email trail." (Def.'s Reply at 7.) The Court affords no credit to this assertion because there is no evidence in the record that when Ms. Hoffman forwarded Plaintiff's email she was "unaware" of the "racist comments" within the e-mail.

8

Assuming *arguendo* that evidence exists in the record to find that Plaintiff has set forth a prima facie case, the Court finds that Defendant has sufficiently satisfied its burden of production to set forth a legitimate, non-discriminatory reason in support of its employment actions relative to Plaintiff. Defendant's proffered exhibits demonstrate Plaintiff was demoted in 2009 as a result of the August 2009 e-mail and his previous pay practices. (*See* Def.'s Ex. A-B.) Likewise, Defendant has asserted that Plaintiff was relegated to part-time status in 2010 as a result of "changes occurring in [its] business" and organizational structure. (*See* Def.'s Ex. C.) The burden then shifts back to Plaintiff to demonstrate that this reason is pretextual. The Court finds that Plaintiff failed to offer any evidence sufficient to support its burden. Instead, Plaintiff asserts unpersuasively that it filed discovery requests to solicit information relevant to "Defendant's enforcement or lack of enforcement of its e-mail policy[.]" (Pl.'s Opp'n at 10-11; *see also id*. at 11 ("The information which has been requested through discovery, but not supplied, is directly relevant to rebutting the Defendant's proffered reasoning for the discipline and to defeat the Defendant's position[.]")) However, Plaintiff has not taken any action, provided for in the Federal Rules of Civil Procedure, to compel Defendant to provide the requested information notwithstanding its objection.[5] Plaintiff has not presented any evidence that "but for" his sex, Defendant would not have demoted him, nor, any evidence that he was not demoted because of his authorship of the e-mail. Rule 56 of the Federal Rules of Civil Procedure requires that,

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

---

5 *See supra* n.3. Plaintiff's failure in this regard is explained because he "believes that [his] evidence is still sufficient to defeat the Defendant's Motion for Summary Judgment." (Pl.'s Opp'n at 11.) However, Plaintiff has wholly failed to offer any evidence rebutting Defendant's non-discriminatory reason.

9

>affidavits or declarations, stipulations . . . admissions, interrogatory answers or other materials; or
>
>(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1). This, Plaintiff has not done. Consequently, drawing all reasonable inferences in favor of Plaintiff, the non-moving party, and upon consideration of his lack of evidence to challenge the Defendant's legitimate non-discriminatory reason for his promotion, the Court finds that no genuine dispute of material fact exists to preclude summary judgment.

*IV.*

The Court finds that Defendant is entitled to summary judgment as a matter of law inasmuch as the parties' written submissions reveal that Plaintiff has not offered *any* evidence sufficient to demonstrate a genuine dispute of material fact exists to defeat Defendant's motion for summary judgment. Therefore, the Court does hereby **ORDER** that Defendant Alliance Healthcare Services, Inc.'s Motion for Summary Judgment (Document 16) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 21, 2013

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA